UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DELMAR LIPFORD,

                              Plaintiff,

v.

THE CITY OF ROCHESTER et al.,

                              Defendants.

Case # 16-CV-6266-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiff Delmar Lipford ("Plaintiff") brings this action against the City of Rochester ("the City"), Rochester Police Department ("RPD") Officers Alexander C. Baldauf and Ricky J. Harris, RPD Sergeants Josh Lewis and Henry Rivera, RPD Lieutenant "SA," and RPD Officers John Does 1-10. ECF No. 1.

Plaintiff filed his Complaint on April 22, 2016, which sets forth the following causes of action: (1) deprivation of civil rights under 42 U.S.C. § 1983; (2) false arrest under § 1983; (3) false arrest under New York law; (4) assault under New York law; (5) battery under New York law; (6) excessive force under § 1983; (7) failure to intervene under § 1983; (8) deprivation of rights under the New York State Constitution; (9) negligence under New York law; (10) malicious abuse of process under New York law; (11) *respondeat superior* under New York law; (12) a *Monell* claim under § 1983 alleging that the City was deliberately indifferent to a pattern of RPD officers using excessive force; (13) a *Monell* claim under § 1983 alleging that the City was deliberately indifferent to a pattern of RPD officers making false arrests; and (14) equal protection under the Fourteenth Amendment.

On June 7, 2016, Defendants moved to dismiss the First, Second, Third, Seventh, Eighth, Ninth, Tenth, Twelfth, Thirteenth, and Fourteenth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. ECF Nos. 12-14. On July 6, 2016, Plaintiff responded in opposition to the motion and consented to the dismissal of his Second, Third, Eighth, Tenth, and Thirteenth causes of action. ECF Nos. 16, 17. Thus, those claims are hereby DISMISSED and the Court will analyze only Plaintiff's First, Seventh, Ninth, Twelfth, and Fourteenth causes of action below. For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

On April 20, 2015 at approximately 10:30 p.m., Plaintiff was stopped in his vehicle at a red light at an intersection in Rochester, New York. ECF No. 1 at ¶¶ 2, 32-33. While he was stopped at the light, an individual in the vehicle next to his threw something out of the window. *Id.* at ¶ 34. Plaintiff exited his vehicle to speak with the occupants in the neighboring vehicle, and he alleges "upon information and belief" that the traffic light was red the entire time. *Id.* at ¶¶ 35, 37. As he was returning to his vehicle, Plaintiff alleges that Defendant Baldauf approached him in "a very aggressive manner" and told him to "get on the fucking curb." *Id.* at ¶¶ 38, 40. As Plaintiff was walking toward the curb, Defendant Baldauf allegedly shoved him in the back twice. *Id.* at ¶¶ 42-43. Thereafter, Defendant Baldauf allegedly shoved Plaintiff in the chest, punched him in the face, and drew his taser but did not shoot it because an unknown female witness announced that she was videotaping them. *Id.* at ¶¶ 45-48. Plaintiff endured "bruising and swelling" as a result of this incident. *Id.* at ¶ 61.

---

[1] The following allegations are taken from Plaintiff's Complaint (ECF No. 1) and are accepted as true for the purpose of evaluating Defendants' Motion to Dismiss.

Defendant Baldauf then ordered Defendant Harris to handcuff Plaintiff. *Id.* at ¶ 56. Thereafter, Defendant Lewis arrived at the scene. *Id.* at ¶ 62. Defendant Baldauf told Defendant Lewis that he was arresting Plaintiff because Plaintiff assaulted him. *Id.* at ¶ 63. Plaintiff explained to Defendant Lewis that he did not assault Defendant Baldauf, and he contends that, because Defendant Baldauf was not visibly injured, it should have been apparent to Defendant Lewis that Plaintiff did not assault Defendant Baldauf. *Id.* at ¶¶ 64-66. Plaintiff also asserts that Defendant Lewis should have known that Defendant Baldauf was "fabricating allegations against Plaintiff" because he "has a long history of using excessive force against individuals in the City of Rochester and fabricating allegations of criminal conduct against those individuals in an attempt to justify his use of excessive force." *Id.* at ¶ 67.

Plaintiff was transported to the Monroe County Jail and was detained until the next morning when he posted bond and was released from custody. *Id.* at ¶¶ 72-73. He was charged with one count each of disorderly conduct and harassment. *Id.* at ¶ 74. Plaintiff alleges that Defendants Rivera and "SA" reviewed and approved his arrest paperwork and that "[i]t would have been apparent to any reasonable supervising police officer reviewing the paperwork prepared by Defendant Baldauf that Plaintiff did not assault Defendant Baldauf, or commit any crime or violation." *Id.* at ¶¶ 77-82. The charges against Plaintiff were dropped on June 9, 2015. *Id.* at ¶ 84.

Plaintiff alleges that Defendant Baldauf subjected him to excessive force because the City and RPD have a "widespread and routine utilization of excessive force and effectuating arrests." *Id.* at ¶ 88. He also alleges that the City is "deliberately indifferent to the widespread and routine practice of RPD officers utilizing excessive force in effectuating arrests." *Id.* at ¶ 89. Plaintiff asserts that the City "has not implemented any curative training, oversight measures or policies

3

designed or intended to curtail the widespread and routine practice of RPD officers utilizing excessive force in effectuating arrests." *Id.* at ¶ 91.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a Rule 12(b)(6) motion, a court ordinarily may not rely on matters outside the complaint unless it treats the motion as one for summary judgment under Rule 56 and gives the parties a reasonable opportunity to present relevant evidence. Fed. R. Civ. P. 12(d). However, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (quotation marks and

4

citations omitted).  With respect to documents that are deemed "integral" to the complaint, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  Furthermore, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."  *Chambers*, 282 F.3d at 153 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

Here, Defendants attached the following documents to their motion to dismiss: Plaintiff's Notice of Claim to the City of Rochester dated July 17, 2015 and the transcript of a January 7, 2016 proceeding before Magistrate Judge Marian W. Payson in the matter *Benny T. Warr et al. v. Anthony R. Liberatore et al.* (13-CV-6508-EAW-MWP (W.D.N.Y.) (ECF No. 74)).  Plaintiff's opposition papers include a copy of the RPD's Subject Resistance Report ("SRR") from the April 20, 2015 incident, which Defendant Baldauf authored and Defendants Rivera and "SA" reviewed. ECF No. 16-1.

Plaintiff asserts that Defendants improperly relied on his Notice of Claim.  ECF No. 20, at 1.  Plaintiff argues that his Complaint only referenced the Notice of Claim by including the requisite jurisdictional allegations (*see* ECF No. 1 at ¶¶ 28-29), and that he did not address the Notice of Claim in his opposition papers "because he voluntarily dismissed his false arrest claims, which were the only claims Defendant's motion papers contradicted" with material related to the Notice of Claim.  ECF No. 20 at 3.  Defendants argue that the Court may consider the Notice of Claim because Plaintiff had notice of it and it is integral to the Complaint.  ECF No. 21 at 2-3.

5

Here, Plaintiff refers to the Notice of Claim in his Complaint and, under the principles discussed above, the Court may properly consider it in deciding Defendants' Motion to Dismiss. ECF No. 1 at ¶¶ 28-29; *see, e.g.*, *Powell v. Dep't of Educ. of City of New York*, No. 14 CV 2363(PKC), 2015 WL 5772211, at *1 (E.D.N.Y. Sept. 30, 2015) (considering the plaintiff's notice of claim because it was "incorporated by reference in the Amended Complaint"). "The notice of claim is a precondition to bringing a tort claim against the City, and thus it is an integral part of the Complaint." *Hazan v. City of New York*, No. 98 Civ. 1716(LAP), 1999 WL 493352, at *6 (S.D.N.Y. July 12, 1999). Additionally, and perhaps more importantly, Plaintiff cannot be surprised by the contents of the Notice of Claim because he served it on the City on or about July 17, 2015. *See Oblio v. City Univ. of City of New York*, No. CV-01-5118 (DGT), 2003 WL 1809471, at *4 (E.D.N.Y. Apr. 7, 2003) ("Indeed, the Second Circuit has indicated that notice to the pleader is the critical element in determining whether extrinsic documents may properly be considered on a motion to dismiss.") (citing *Cortec*, 949 F.2d at 48). Accordingly, the Court will review the Notice of Claim in conjunction with its review of Defendants' Motion to Dismiss.

The Court will also consider the January 7, 2016 *Warr* transcript because it is incorporated by reference into Plaintiff's Complaint, which discusses the *Warr* matter at length and cites to its complaint, an August 25, 2015 transcript, an affidavit, and video evidence. ECF No. 1 at ¶¶ 223-34. Similarly, the Court will consider the SRR related to this incident because it is also incorporated by reference into Plaintiff's Complaint. ECF No. 1 at ¶¶ 77, 90.

## DISCUSSION

### I. First Claim: Deprivation of Civil Rights under § 1983

Defendants argue that Plaintiff's first cause of action should be dismissed because it is a "catch all" claim that fails to put Defendants on notice of specific actions that allegedly injured

6

Plaintiff. ECF No. 14, at 5. Interestingly, Plaintiff does not argue that this claim should survive. ECF No. 17.

Section 1983 imposes civil liability upon any person who, under color of state law, subjects an individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 137 (2d Cir. 1999). Section 1983 is not itself a source of any substantive rights, but rather is a vehicle by which citizens may seek to vindicate rights conferred elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "[T]o state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987). Allegations that amount to "nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Id.*

Here, Plaintiff's first cause of action broadly asserts that all Defendants violated his due process and free speech rights and his right to be free from seizure and arrest without probable cause, false criminal charges, excessive force, retaliatory prosecution, and abuse of process. ECF No. 1 at ¶¶ 95-105. These vague and conclusory statements do not give Defendants "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief[.]"). Accordingly, Plaintiff's first cause of action is DISMISSED.

## II. Seventh Claim: Failure to Intervene under § 1983

Plaintiff's seventh cause of action alleges that Defendants Harris, Lewis, "SA," and Rivera failed to intervene on his behalf to prevent the violation of his constitutional rights even though

they had a realistic opportunity to do so. ECF No. 1 at ¶ 146. Defendants argue that this claim must be dismissed because Defendants Harris and Lewis arrived at the scene after Defendant Baldauf allegedly used excessive force against Plaintiff, and Defendants "SA" and Rivera were not present at all and merely reviewed the arrest paperwork. ECF No. 14 at 11-12. Thus, Defendants assert that Plaintiff fails to plausibly allege that any of those Defendants had reason to know that Plaintiff's constitutional rights were being violated or, if they had known, that they had a realistic opportunity to intervene to prevent the harm. *Id.*

Plaintiff maintains that this claim is well-pled as to Defendant Harris because the Complaint alleges that "Defendant Harris was present throughout the entire interaction between Defendant Baldauf and Plaintiff, and knew that Plaintiff had not committed a crime or violated the law in any way," and "Defendant Harris had the time and access to intervene to stop and/or prevent the unlawful assault, battery, use of excessive force and false arrest of Plaintiff but chose not to." ECF No. 17 at 19-20 (citing ECF No. 1 at ¶¶ 58-59). Plaintiff does not argue that this claim survives against Defendants Lewis, "SA," or Rivera. ECF No. 17, at 19-20.

An officer can be liable under § 1983 for his or her failure to intervene in a situation where excessive force is being used if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 129 (2d Cir. 1997). Whether an officer had sufficient time to intervene is ordinarily an issue for the jury to resolve "unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994). Generally, an officer cannot be liable for failing to intervene in incidents that happen in a "matter of seconds." *Henry v. Dinelle*, No. 9:10-CV-0456

(GTS/DEP), 2011 WL 5975027, at *4 (N.D.N.Y. Nov. 29, 2011) (citation omitted); *Hughes v. Nemier*, No. 12-CV-6024-FPG, 2016 WL 7056540, at *2 (W.D.N.Y. Dec. 5, 2016) (finding that the defendants did not have an opportunity to intervene where the plaintiff testified that the incident "happened kind of fast" and lasted only "a few seconds").

Here, Defendants point out that paragraphs 38 to 55 of the Complaint describe the alleged physical altercation between Plaintiff and Defendant Baldauf without any mention of Defendant Harris's presence. ECF No. 18 at 9. Defendants also argue that Plaintiff's Notice of Claim "makes explicit . . . that Officer Harris did not appear on the scene until after any alleged use of force by Officer Baldauf was complete." *Id.* (citing ECF No. 13-2 at 2-3).

Plaintiff's Complaint specifically alleges, however, that Defendant Harris was present during the altercation between Defendant Baldauf and Plaintiff and that he had the time and ability to intervene on Plaintiff's behalf. ECF No. 1 at ¶¶ 58-59. Plaintiff also alleges that Defendant Baldauf shoved him three separate times before punching him in the face and drawing his taser. *Id.* at ¶¶ 42-43, 45-47. Thus, if Defendant Harris was present for the entire altercation as Plaintiff alleges, it is plausible that he would have had an opportunity to intervene. Moreover, Plaintiff's Notice of Claim does not make it clear that Defendant Harris arrived after the use of force concluded. The Notice of Claim describes the incident with Defendant Baldauf and then indicates that Defendant Harris "approached the scene" and then handcuffed and arrested Plaintiff. ECF No. 13-2 at 2-3. It is plausible that Defendant Harris observed the entire incident from a nearby area before he "approached the scene," and that he could have intervened to prevent the alleged harm.

Plaintiff's Complaint makes clear that Defendants Lewis, "SA," and Rivera were not present for the alleged excessive force incident and were not directly involved in Plaintiff's arrest.

*Id.* at ¶¶ 62-82. Thus, they were not personally involved in any constitutional violation and none of them had a realistic opportunity to intervene to prevent the harm. *Ricciuti,* 124 F.3d at 129; *Livingston v. Escrow*, No. 08-CV-6576-FPG, 2013 WL 5603870, at *6 (W.D.N.Y. Oct. 11, 2013) ("Personal involvement is a prerequisite for the assessment of damages in a § 1983 action against a supervisory official in his individual capacity.") (citing *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010)).

Accordingly, Defendants' Motion to Dismiss the failure to intervene claim is DENIED as to Defendant Harris and is GRANTED as to Defendants Lewis, "SA," and Rivera.

### III.  Ninth Claim: Negligent Training and Supervision

Plaintiff's ninth cause of action alleges that the City was "negligent in the hiring and retention" of Defendant Police Officers under New York law. ECF No. 1 at ¶¶ 157-61. Defendants argue that this claim must be dismissed because Defendants Baldauf and Harris were acting within the scope of their employment when the alleged incident occurred. ECF No. 14 at 13. Plaintiff maintains that this claim is well-pled as to Defendants Baldauf and Harris because he alleges that "the City became aware or should have become aware of problems with Defendants Baldauf and Harris that demonstrated they were unfit, that the City failed to take any action such as dismissing them, placing them on force monitoring, or providing them with additional supervision," and that the City's negligent retention and supervision of Defendants Baldauf and Harris caused his injuries. ECF No. 17 at 20.

"To maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of [his or] her employment." *Velez v. City of New York*, 730 F.3d 128, 136-37 (2d Cir. 2013) (quotation marks and citation omitted). "If the employee acted within the scope of [his or]

her employment, the employer and the employee's supervisors may be held liable for the employee's negligence only under a theory of *respondeat superior*." *Id.* at 137 (citing *Karoon v. N.Y.C. Trans. Auth.,* 659 N.Y.S.2d 27, 29 (1st Dep't 1997)). "This is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the . . . adequacy of the training." *Id.*

Here, Plaintiff does not allege that Defendants Baldauf or Harris acted outside the scope of their employment during the course of events giving rise to his claims. *See Zeak v. United States*, No. 11-CV-4253, 2015 WL 246340, at *4 (S.D.N.Y. Jan. 20, 2015) (holding that the plaintiff's "negligent hiring and supervision claim fails because [she] cannot show that the alleged malpractice occurred outside the scope of the [defendants'] employment"). Instead, Plaintiff repeatedly alleges that Defendants acted "under the color of state law," "in their capacities as police officers with all of the actual and/or apparent authority attendant thereto," and "within the scope of their employment by the Defendant City and the RPD." [2] *See, e.g.*, ECF No. 1 at ¶¶ 96, 99, 129, 136-37, 169-70. Accordingly, Plaintiff's negligent training and supervision claim is DISMISSED. *See Velez*, 730 F.3d at 137 ("Plaintiff conceded that the defendants were acting within the scope of their employment, thus judgment as a matter of law was warranted on the negligent training claim.").

## IV. Twelfth Claim: Municipal Liability for Excessive Force under § 1983

Plaintiff alleges that the City was deliberately indifferent to its training and supervision of police officers, which allowed Defendants to abuse their authority and caused Plaintiff's injuries in this case. ECF No. 1 at ¶¶ 173-267. More specifically, Plaintiff asserts that the City and RPD

---

[2] Because it is alleged that Defendants Baldauf and Harris acted within the scope of their employment, the City may be held liable for their negligence only under a theory of *respondeat superior*. Plaintiff's eleventh cause of action, which Defendants have not moved to dismiss, is a *respondeat superior* claim under New York law against the City. ECF No. 1 at ¶¶ 168-172.

11

"maintain an unconstitutional policy, practice and custom of RPD officers employing excessive force in the course of effectuating arrests and during non-arrest interactions with individuals in the City of Rochester" and "lack any standard governing RPD officers' use of force." *Id.* at ¶¶ 174, 176. Plaintiff alleges that the City has "historically and persistently failed to discipline RPD officers who engage in misconduct and violate individuals' civil rights" and "failed to train RPD officers regarding the constitutional rights of arrestees to be free from excessive force." *Id.* at ¶¶ 181, 185.

To sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show (1) the existence of an officially adopted policy or custom and (2) a causal connection between the custom or policy and the deprivation of a constitutional right. *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2012 WL 3871517, at *3 (S.D.N.Y. Sept. 6, 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) and *Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir. 1992)). A plaintiff may satisfy the "policy or custom" requirement in several ways, including by alleging that policymakers failed to adequately train or supervise subordinates to such an extent that it constituted deliberate indifference to the rights of those who came into contact with the municipal employees. *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

As the Second Circuit has held, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). For municipal liability to attach under Section 1983, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate

indifference for purposes of failure to train." *Id.* at 62 (internal quotation marks and citation omitted).

To allege deliberate indifference in the context of a failure-to-train claim, a plaintiff must plead facts giving rise to a plausible inference that (1) the municipality knows "to a moral certainty" that its employees will confront a given situation; (2) either the situation presents the employees with a difficult choice of the sort that training will make less difficult, or there is a history of employees mishandling the situation; and (3) the wrong choice by the employee will frequently cause a constitutional deprivation. *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992).

Plaintiff's allegations are too general to plausibly state a *Monell* claim. The Complaint alleges that "since 2002, at least five (5) RPD Officers have been accused of using excessive force on multiple occasions in civil rights lawsuits, Notices of Claim, and/or civilian complaints; however, upon information and belief, none of these officers were ever reprimanded, suspended, retrained on the use of force, or otherwise disciplined by the Defendant City or the RPD." *Id.* at ¶ 188. Plaintiff then describes incidents involving RPD officers not associated with this case, wherein he alleges that because an officer was accused of using excessive force, and because the officer was not disciplined and/or because the City of Rochester settled the lawsuit, or because the civilian review board, the professional standards section of the RPD or the police chief exonerated the accused officer, that these incidents demonstrate a policy or practice of RPD officers using excessive force, and/or that officers were improperly trained on the use of force.

There are several problems with this argument. First, Plaintiff does not describe the settled cases with sufficient supporting detail. Plaintiff makes the leap from a settlement in an excessive force case to essentially arguing that the Defendant officer in that individual case is therefore liable

13

of the alleged conduct. While the Court does not discount the possibility of using settled cases to demonstrate a policy or practice claim, the series of disconnected events here do not support a plausible claim. Further, Plaintiff's cause of action for *Monell* liability is painted with too broad of a brush. To characterize the policy or practice at issue as using excessive force is too general. In the Court's view, the events alleged would have to be sufficiently similar to support an allegation of a policy or practice. *See Pluma v. City of New York*, No. 13-cv-2017-LAP, 2015 WL 1623828, at *12 (S.D.N.Y. Mar. 31, 2015) (holding that a "handful of dissimilar incidents occurring over the course of more than a decade is too sparse to put the City on notice that the NYPD's training program produces officers who are likely to commit constitutional violations through their deployment of pepper spray"); *see also Marom v. City of New York*, No. 15-cv-2017-PKC, 2016 WL 916424, at *22 (S.D.N.Y. Mar. 7, 2016) (holding that a study recommending further investigation of previously alleged incidents of force was insufficient to state a failure-to-train claim).

Further, the fact that Defendants Baldauf and Harris are named as Defendants in a pending case before Judge Larimer does not change the outcome. *See Ivery v. Baldauf*, 14-CV-6041-DGL. That case, which is unresolved and at the summary judgment stage of the litigation, does not constitute a policy or practice involving these Defendants. True, the Complaint alleges that Defendants Baldauf and Harris engaged in two incidents of excessive force (this case and the case before Judge Larimer), and if those allegations are proved, then Defendants Baldauf and Harris will be held responsible in those actions. However, two incidents of excessive force do not amount to a policy or practice, and the additional allegations in the Complaint do not suffice to nudge these allegations into plausible *Monell* claims. For all of these reasons, Plaintiff's Complaint fails to state a claim under *Monell* and his Twelfth cause of action is therefore DISMISSED.

## V. Fourteenth Claim: Equal Protection under § 1983

Finally, Defendants argue that Plaintiff's equal protection claim must be dismissed because Plaintiff fails to set forth any facts suggesting that Defendants acted with racial animus. ECF No. 14 at 15. Specifically, Defendants contend that it is insufficient that Plaintiff provided statistics demonstrating that African-Americans were arrested at a greater rate than non-African-Americans in 2011 and 2012 because Plaintiff does not set forth facts suggesting that the difference in these rates is attributable to intentional discrimination. *Id.* Plaintiff maintains that the news articles he cites in support of his equal protection claim demonstrate that the RPD "abuses" African-Americans. ECF No. 17 at 23.

To state a viable equal protection claim under the Fourteenth Amendment, "a plaintiff generally must allege either 'purposeful discrimination . . . directed at an identifiable or suspect class,'" *Barnes v. Fedele*, 760 F. Supp. 2d 296, 301 (W.D.N.Y. 2011) (quoting *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)), or that he or she "has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment." *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Here, Plaintiff merely alleges that he was arrested and subjected to excessive force due to "a custom or practice of racism of victimization" and that the City "has a pattern and practice of unlawfully targeting and abusing young black men based on their race." ECF No. 1 at ¶¶ 305-07. He does not allege that he was subjected to intentional discrimination, but rather alleges that his arrest was improper "because the Defendants informed Plaintiff that he was being arrested after it was already established that Plaintiff was not carrying any weapons or illegal substances, and did not have any outstanding warrants against him." *Id.* at ¶ 307. Plaintiff's allegations that Defendants were motivated "by a custom or practice of racism" and "carried out a discriminatory

application of such laws" (*Id.* at ¶¶ 305-08) are conclusory and lacks "factual content that allows the court to draw the reasonable inference that [D]efendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In fact, Plaintiff notes that "[t]o the extent that Defendants are correct that [he] failed to allege that the Defendants intentionally discriminated against him on the basis of his race, [he] requests the court permit [him] to address this omission on filing of an amended complaint." *Id.* Plaintiff has not, however, properly moved to amend his Complaint, which requires him to "attach an unsigned copy of the proposed amended pleading as an exhibit to the motion." Local R. Civ. P. 15(a). Accordingly, Plaintiff's equal protection claim is DISMISSED.

## CONCLUSION

Defendants' Motion to Dismiss (ECF Nos. 12, 13, 14) is GRANTED IN PART and DENIED IN PART. Based on Plaintiff's consent (ECF Nos. 16, 17), his Second, Third, Eighth, Tenth, and Thirteenth causes of action are dismissed. For the reasons stated in this decision, Plaintiff's First, Ninth, Twelfth, and Fourteenth causes of action are dismissed, and Plaintiff's Seventh cause of action is dismissed as to Defendants Lewis, "SA," and Rivera.[3] Plaintiff's Fourth, Fifth, Sixth, Seventh (as to Defendant Harris only), and Eleventh causes of action remain a part of this case.

IT IS SO ORDERED.

Dated: September 29, 2017
 Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[3] The Court declines Defendants' request that it direct Plaintiff to "file an amended complaint setting forth, in a 'short and plain statement,' only those causes of action which the Court determines to be viable." ECF No. 14, at 2. Plaintiff's Complaint (ECF No. 1) will remain the operative pleading in this case.

16